Sheldon Eisenberg (SBN 100626)
sheldon.eisenberg@dbr.com
Adam J. Thurston (SBN 162636)
adam.thurston@dbr.com
Erin McCracken (SBN 244523)
erin.mccracken@dbr.com
**DRINKER BIDDLE & REATH LLP**
1800 Century Park East
Suite 1400
Los Angeles, California  90067-1517
Telephone:   (310) 203-4000
Facsimile:    (310) 229-1285

Attorneys for Plaintiff
Landmark Entertainment Group, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANDMARK ENTERTAINMENT GROUP, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HASBRO, INC., a Rhode Island corporation; HASBRO STUDIOS, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:14-cv-05539<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT AND ACCOUNTING<br><br>JURY TRIAL DEMAND |

ACTIVE/ 75908238.3

Plaintiff Landmark Entertainment Group, LLC ("Landmark" or "Plaintiff") hereby alleges the following claims for relief against Defendants Hasbro, Inc. ("Hasbro") and Hasbro Studios, LLC ("Hasbro Studios) (collectively, the "Hasbro Defendants"), and Does 1 through 10, inclusive (collectively, the Hasbro Defendants and Does 1 through 10 are referred to as the "Defendants").

## PRELIMINARY STATEMENT

1. Landmark has been required to file this action to enforce its contractual and intellectual property rights in its original creative works consisting of the iconic characters, locations, storyline, artwork, and environmental elements that make up the renowned world of the famous children's board game *Candy Land*, as depicted on the game board, box, thematic playsets and toys. Hasbro has infringed and is willfully infringing Landmark's rights by, among other things, making a feature film based upon Landmark's *Candy Land* characters and other creative works without authorization, attribution or compensation. In addition, Landmark has learned that Hasbro has produced merchandise and animated features using Landmark's intellectual property without authorization, attribution, or even disclosure to Landmark, and has failed to report or pay royalties on sales of other merchandise falling within the scope of its license agreement with Landmark. When confronted with Landmark's assertion of its rights, Hasbro has refused to provide information about its exploitation of Landmark's intellectual property and wrongfully claimed ownership of Landmark's characters, despite a license agreement to the contrary.

## JURISDICTION AND VENUE

2. This action is brought under the federal Copyright Act of 1976, as amended, 17 U.S.C.A. §§ 101.

3. This Court has original subject matter jurisdiction over this action, and the claims asserted herein, pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction") and § 1338(a) (actions arising under any Act of Congress relating to

1   copyright) in that this action arises under the laws of the United States and, more
2   specifically, Acts of Congress relating to copyrights.  This Court has subject matter
3   jurisdiction over the non-federal claims asserted herein pursuant to 28 U.S.C.
4   § 1367(a) ("supplemental jurisdiction") in that they are so related to federal law
5   claims in the action that they form part of the same case or controversy under
6   Article III of the United States Constitution.

7       4.    Defendants are subject to personal jurisdiction of the Court because
8   they reside, have agents, do or transact business, or are otherwise found, and have
9   purposefully availed themselves of the privilege of doing business, in California
10  and this District.

11      5.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(a)
12  because Defendants have a regular and established place of business in this District
13  and may be found in this District.  Venue is also proper in this District pursuant to
14  28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving
15  rise to the claims occurred in this District and a substantial part of the property that
16  is the subject of this action is situated in this District.  Alternatively, venue is also
17  proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendants have
18  a regular and established place of business in this District and may be found in this
19  District.

20  **THE PARTIES**

21      6.    Plaintiff Landmark Entertainment Group, LLC is the successor in
22  interest to Gary Goddard Productions ("GGP").  (For ease of reference GGP will be
23  referred to throughout as Landmark.)  Landmark was founded in 1980 and quickly
24  became a leader in the field of theme park attraction design and development,
25  creating attractions for Universal Studios and Six Flags.  By 1984, Landmark was
26  engaged in the development of game and toy concepts and artwork, including its
27  now famous *Candy Land* characters and environments.  Landmark has become
28  renowned in the fields of entertainment design, hospitality design, retail and brand

experience design, and architectural design.  Landmark is a California limited liability company, with its principal place of business within this District, duly authorized to do and doing business in this District.

7. Landmark is informed and believes and thereon alleges that Milton Bradley Company ("Milton Bradley") was a Massachusetts corporation with its principal place of business originally located in Springfield, Massachusetts.  Milton Bradley was a manufacturer of board games and toys.  Landmark is informed and believes and thereon alleges that Milton Bradley was acquired by Hasbro in 1984, and that Milton Bradley was ultimately merged into Hasbro.  Accordingly, Landmark alleges upon information and belief that Hasbro is now the successor-in-interest to all of Milton Bradley's rights and obligations alleged herein, including the rights and obligations pertaining to the board game *Candy Land*, and the original artwork, environments, characters and storyline developed by Landmark for the *Candy Land* game, as more fully alleged below.

8. Landmark is informed and believes and thereon alleges that Defendant Hasbro is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island, doing business in this District.  At all times material hereto, Hasbro has been engaged in the business of, among other things, manufacturing and selling toys and board games.

9. Landmark is informed and believes and thereon alleges that Defendant Hasbro Studios is a Delaware limited liability corporation with its principal place of business in Burbank, California.  Landmark is informed and believes and thereon alleges that Defendant Hasbro Studios is a wholly owned subsidiary of defendant Hasbro.  At all times material hereto, Hasbro Studios has been engaged in the business of development, production and distribution of television, feature film, and short form content based upon Hasbro's brands.

10. The true names and capacities, whether individual, corporate, partner, associate, agent, employee, or otherwise, of the defendants named in this complaint

1  as Does 1 through 10, inclusive, are unknown to Landmark, which therefore sues
2  such defendants by such fictitious names.  Landmark will amend this complaint to
3  show the true names and capacities of the Doe defendants when it has ascertained
4  the same.  Landmark is informed and believes and on that basis alleges that, at all
5  relevant times, Does 1 through 10, inclusive, are responsible in some manner for
6  the conduct herein alleged and proximately caused Landmark's damages.
7  Landmark is informed and believes and on that basis alleges that at all relevant
8  times Does 1 through 10, inclusive, and each of them, were the agents of, and/or
9  were acting in concert with, each of the remaining defendants and, in doing the
10 things alleged, were acting within the scope of such agency.  Any reference to any
11 of the named defendants herein shall also constitute a reference to the Doe
12 defendants, inclusive.

**FACTUAL ALLEGATIONS**

13
14     11.    The *Candy Land* world and its inhabitants, familiar to children and
15 their parents throughout the United States, is largely the product of original
16 copyrighted artistic works developed and created by Landmark in the early 1980s.
17 Prior to 1984, the *Candy Land* board game contained no characters, other than a
18 generic boy and girl depicted as entering *Candy Land*.  In 1984, the *Candy Land*
19 game board and box were completely revamped with original artwork, characters,
20 and a storyline developed and created by Landmark, including:  King Kandy; Lord
21 Licorice, the Dark Duke of Rockcandy Castle; Princess Lolly of the Lollypop
22 Woods; Queen Frostine of the Ice Cream Sea; Mr. Mint, the Peppermint Forest
23 Jester; Jolly, the Gumdrop Mountain Greeter; Plumpy, last of the Plumpatrolls;
24 Gramma Nut, the Peanut Brittle Lady; Gloppy, Molasses Monster of the Sweet-
25 Tooth Swamp; and new Candy Land Kids.  Landmark also created the Candy Land
26 Castle (which replaced "Home Sweet Home" from the original game board), and
27 added the Rockcandy Castle, among other elements of authorship.
28     12.    Landmark further developed these characters and environments with

an original storyline printed on the box and a scripted audio cassette featuring voice actors in a short story adventure that further delineated each character's personality. These original Landmark works form the basis of the *Candy Land* game board, box, playsets, toys, and environments that have been sold since 1984 and are still in circulation today.

13. These original, copyrighted, creative works were developed by Landmark and licensed to Milton Bradley pursuant to an agreement entered into in April 1985, with an effective date of May 18, 1983 (the "License Agreement"). Pursuant to the License Agreement, Landmark granted to Milton Bradley the exclusive right to manufacture, sell and distribute, and sublicense toys throughout the United States based upon the "Concept," defined as: "a toy concept entitled 'THE MAGIC KINGDOM OF CANDYLAND' consisting of figures and related thematic playsets and environments based upon the 'CANDYLAND' games" owned by Milton Bradley.

14. The License Agreement provided for the payment of a nonrefundable sum of $50,000 to Landmark, $25,000 of which was to be applied as an advance against royalties to become payable under the License Agreement, which sums were paid by Milton Bradley to Landmark. Under the License Agreement, royalties were payable on toys other than the *Candy Land* board game itself that Milton Bradley manufactured and sold "equal to THREE PERCENT (3%) of the LICENSEE's Net Jobbers' Selling Price," defined as "the lowest price at which LICENSEE or its licensees sells to jobbers or like distributors less only trade discounts, cash discounts, transportation allowances, and taxes (other than income taxes) if any, and allowances to buyers for returned or rejected materials."

15. Milton Bradley manufactured toys under the License Agreement and, for a period of time, paid royalties and accounted to Landmark for products sold pursuant to the License Agreement.

16. The License Agreement contains numerous terms confirming

Landmark's ownership of the original works it created and licensed to Hasbro. For example:

    a. The License Agreement provides that "[Landmark] hereby grants to Licensee the exclusive right to manufacture, sell and distribute and sublicense products based upon the Concept throughout the United States (the 'Articles')."

    b. If Milton Bradley failed to introduce the toys/articles at either the 1985 or 1986 Toy Fair, the License Agreement provides that "all rights granted hereunder shall automatically terminate at the end of Toy Fair, 1986" and revert back to Landmark.

    c. Landmark warranted in the License Agreement that "it has such right, title and interest in and to the Concept as to enable it to vest in LICENSEE without any qualification whatsoever, the sole and exclusive right privilege and license herein conveyed...."

    d. The License Agreement also provides that the rights and licenses conferred are within the scope of "copyright protection on said Concept as [Landmark] does now or may hereafter own, control or be entitled to...," and that any patent protection obtained on the Concept would be "in the name of and to remain the property of [Landmark] during and following any termination or cancellation" of the License Agreement.

    e. The License Agreement provides that Milton Bradley's right to use the *Candy Land* characters and all other aspects of the Concept ceases upon termination of the Agreement.

17. In addition, after the License Agreement was entered into, Hasbro filed copyright registrations in Landmark's name as follows:

    a. *Candyland, 35 piece floor puzzle*; *no.* 4676-1. VA 239-394, effective 1986-08-08 (date of first publication 1985-02-11).

1   Claimant: Landmark Entertainment Group

2   b. *Candyland, 35 piece floor puzzle*; *no.* 4676-3.  VA 239-718,

3   effective 1986-08-08 (date of first publication 1985-02-11).

4   Claimant: Landmark Entertainment Group

5   c. *Candyland, 35 piece floor puzzle*; *no.* 4676-2.  VA 239-719,

6   effective 1986-08-08 (date of first publication 1985-02-11).

7   Claimant: Landmark Entertainment Group

8   d. *Candyland, 35 piece floor puzzle; no.* 4676-4.  VA 239-720,

9   effective 1986-08-08 (date of first publication 1985-02-11).

10   Claimant: Landmark Entertainment Group

11   18. In 2013, Landmark became aware for the first time of reports that Hasbro was considering making a feature film based upon the *Candy Land* characters and environments that had been created by Landmark and licensed to Hasbro. Hasbro had not reported this fact to Landmark, nor sought authorization to make such a film, despite the fact that the License Agreement did not give Hasbro the right to use Landmark's works in this way.

17   19. Based upon this new information, Landmark investigated further and discovered for the first time that Hasbro had apparently used the *Candy Land* characters in the marketing and sale of at least one floor puzzle without reporting these sales or paying Landmark any royalties under the License Agreement.

21   20. In addition, Landmark's investigation revealed for the first time that Hasbro had apparently—without disclosing to or seeking the authorization of Landmark—used the *Candy Land* characters in the marketing and sale of (1) at least one home video cassette animated production, (2) an electronic hand-held game, and (3) a DVD-based video game. The License Agreement does not authorize these uses of the *Candy Land* Works.

27   21. On September 6, 2013, Landmark's attorney sent a letter to Hasbro's counsel giving Hasbro notice that it must (1) provide accounting statements and

royalty payments for all uses of Landmark's original Works which fell within the scope of the License Agreement, (2) compensate Landmark for Hasbro's prior uses of Landmark's Works which fell outside of the scope of License Agreement, and (3) obtain Landmark's authorization for any use of Landmark's original Works in connection with a feature film.

22. In response, Hasbro's counsel took the position that Hasbro owned the subject Works as works made-for-hire, and refused to provide a complete and accurate accounting, pay royalties due, or confirm its obligation to seek Landmark's authorization to create a feature film based upon Landmark's copyrighted Works.

23. In May 2014, Hasbro published an Investor Fact Sheet which announced that its Hasbro Studios subsidiary was developing and producing a feature film based upon the *Candy Land* game. Media outlets have reported that the *Candy Land* film will star Adam Sandler and be distributed by Columbia Pictures.

24. Statements made by Hasbro and Columbia have confirmed that the feature film is based upon the *Candy Land* world and its inhabitants, and therefore infringes upon Landmark's copyrighted works. For example:

    a. Doug Belgrad, President of Columbia Pictures, has been quoted as stating: "Candyland is more than just a game. It is a brand that children, parents, and grandparents know and love. The world of Candyland offers an extraordinary canvas upon which to create a fantastical live-action family adventure film with a larger than life part for Adam. We are thrilled to partner with Hasbro and Happy Madison on this project."

    b. Hasbro President and CEO, Brian Golner stated in a press release: "The creative talent on board for this movie is amazing and we are excited to bring alive the world of Candy Land for kids and families everywhere."

    c. Wayne S. Charness, senior vice president of communications for

|   |   |
|---|---|
| 1 | Hasbro has stated: "I think it will be a movie for the whole |
| 2 | family....It's such a beloved brand. You just think about all the |
| 3 | imagery in the game, and you can imagine what a wonderful world |
| 4 | it will make on the screen." |
| 5 |     d. According to another report, Candy Land will be "a live-action epic |
| 6 | which centers on the adventure of a group, who try to find the lost |
| 7 | king of Candy Land. The gang travel through such locales as the |
| 8 | Candy Cane Forrest and Gum Drop Mountain." |

25. Defendants' have failed and refused to report and pay royalties clearly owed under the License Agreement; refused to provide an accounting to Landmark of its sales of products using Landmark's *Candy Land* characters; and wrongly claimed ownership of, and sought to exploit, Landmark's copyrighted works. Defendants' bad faith conduct toward Landmark has required Landmark to file this action as a last resort to protect and vindicate its rights.

## FIRST CLAIM FOR DECLARATORY JUDGMENT
### (Against All Defendants)

26. Landmark incorporates by reference paragraphs 1 through 25, inclusive, and realleges them here as though fully set forth herein.

27. Landmark created the following original works of authorship (collectively, the "Works"), reduced each of them to at least one tangible medium, constituting copyrightable subject matter under the laws of the United States:

    a. King Kandy;

    b. Lord Licorice: The Dark Duke of Rockcandy Castle;

    c. Princess Lolly: of the Lollypop Woods;

    d. Queen Frostine: of the Ice Cream Sea;

    e. Mr. Mint: The Peppermint Forest Jester;

    f. Jolly: The Gumdrop Mountain Greeter;

    g. Plumpy: Last of the Plumpatrolls;

    h. Gramma Nutt: The Peanut Brittle Lady;

    i. Gloppy: Molasses Monster of the Sweet-Tooth Swamp;

    j. The Candy Land Kids;

    k. Candy Land: A Child's First Game (Game Board Artwork).

  28. Landmark is the sole proprietor of all right, title and interest in and to the copyrights in these Works.

  29. Landmark complied in all respects with the United States Copyright Act of 1976 and all other laws governing copyright, by applying for and receiving copyright registrations on these Works from the Register of Copyrights. Copies of the Certificates of Registration for these Works, together with the deposits upon which they are based, are attached hereto as exhibits and incorporated herein by this reference as follows:

    a. Exhibit A: *King Kandy (Candy Land Project: Maquette and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-346;

    b. Exhibit B: *Lord Licorice: The Dark Duke of Rockcandy Castle (Candy Land Project: Character Roughs, Maquette, and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-337;

    c. Exhibit C: *Princess Lolly: Of the Lollypop Woods (Candy Land Project: Character Roughs, Maquette, and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-348;

    d. Exhibit D: *Queen Frostine: Of the Icecream Sea (Candy Land Project: Character Roughs, Maquette, and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-347;

    e. Exhibit E: *Mr. Mint: The Peppermint Forest Jester (Candy Land Project: Character Roughs, Maquette, and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-336;

  f. Exhibit F: *Jolly: The Gumdrop Mountain Greeter (Candy Land Project: Character Roughs, Maquette, and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-334;

  g. Exhibit G: *Plumpy: Last of the Plumpatrolls (Candy Land Project: Character Roughs, Maquette, and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-350;

  h. Exhibit H: *Gramma Nutt: The Peanut Brittle Lady (Candy Land Project: Character Roughs, Maquette, and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-351;

  i. Exhibit I: *Gloppy: Molasses Monster of the Sweet-Tooth Swamp (Candy Land Project: Character Roughs, Maquette, and Preliminary Character Design Drawings)*, Registration No. VAu 1-171-332;

  j. Exhibit J: *The Candy Land Kids (Candy Land Project: Character Roughs, Maquettes, and Preliminary Character Design Drawings)*, Revistration No. VAu 1-172-541

  k. Exhibit K: *Candy Land: A Child's First Game*, Registration No. VAu 1-171-962.

30. An actual controversy has arisen and now exists relating to the rights and duties of Landmark and Defendants under the U.S. copyright laws in that Landmark contends that it is the sole owner the copyrights in the Works, while Defendants apparently contend that Hasbro is the owner of the Works. In addition, Landmark contends that the license it granted to Hasbro in the License Agreement is limited to toys, and thus does not extend to animated or live action films, handheld electronic games, or DVD-based video games. Upon information and belief, Defendants apparently contend that they are entitled to use the Works in connection with such products either because they own the Works outright, or because the License Agreement extends to some or all of them. Further,

Defendants are actively using the Works as if they have the legal right to do so in connection with the production of a live action feature film, without obtaining Landmark's authorization to do so.

31. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202, and Rule 57 of the Federal Rules of Civil Procedure, Landmark requests a judicial determination of its rights, and a declaration of: (1) whether Landmark is the owner of the copyrights in an to the Works; and (2) whether the License Agreement permits Defendants to use the Works in connection with products other than toys.

32. A judicial declaration is necessary and appropriate at this time in order that Landmark may ascertain the parties' rights.

## SECOND CLAIM FOR RELIEF FOR COPYRIGHT INFRINGEMENT
## (Against All Defendants)

33. Landmark incorporates by reference paragraphs 1 through 32, inclusive, and realleges them here as though fully set forth herein.

34. Landmark is the sole author of the Works, which constitute literary, pictorial, graphic and sculptural works pursuant to 17 U.S.C. § 102.

35. The Works contain a substantial amount of material created by Landmark's own skill, labor and judgment, and are copyrightable subject matter under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

36. Landmark is the sole proprietor of all right, title and interest in and to the copyrights in the Works.

37. Certificates of Registration for each of the Works naming Landmark as the claimant, are attached hereto as Exhibits A through K, inclusive.

38. Landmark's exclusive rights extend to each protectable component of each of the Works, including the right to create derivative works based thereon.

39. Landmark has the right and standing to enforce its exclusive rights to the Works and their copyrightable component parts.

40. At all times material hereto, Landmark has duly complied with all of

1   the provisions of the copyright laws of the United States applicable to the Works.

2         41.    In 2013, Landmark discovered, for the first time, that Defendants have
3   wrongfully copied, reproduced, prepared derivative works from, distributed copies
4   of, performed, and displayed the Works without first obtaining a license or other
5   authorization from Landmark. Defendants continue to do so. Prior to 2013,
6   Landmark had no notice or knowledge of Defendants' infringement and no reason
7   to believe that Defendants were failing to report licensed sales and failing to seek
8   authorization for uses of the Works beyond the scope of the License Agreement.

9         42.    Defendants' conduct constituted, and continues to constitute,
10  infringement upon Landmark's exclusive rights to reproduce, prepare derivative
11  works based upon the Works, distribute copies of the Works, perform the Works
12  publically, display the Works publically, and to authorize others to do any of the
13  foregoing, all in violation of 17 U.S.C. §§ 106 and 501.

14        43.    Defendants' infringement was, and continues to be, intentional,
15  deliberate, willful, malicious and in blatant disregard of Landmark's exclusive
16  rights.

17        44.    Defendants' acts as alleged above have caused, and if not enjoined,
18  will continue to cause, irreparable damage to Landmark's exclusive rights in a
19  manner that cannot be calculated or compensated solely by money damages.
20  Accordingly, Landmark is entitled to an injunction against Defendants and their
21  officers, directors, employees, agents, representatives, affiliates, subsidiaries,
22  distributors and all persons acting in concert with them, to stop their infringing
23  conduct, pursuant to 17 U.S.C. § 502.

24        45.    Landmark is further entitled to an order impounding and disposing of
25  all infringing materials, including but not limited to all originals, copies,
26  reproductions and derivatives of the Works in Defendants' possession, custody or
27  control pursuant to 17 U.S.C. § 503.

28        46.    Defendants' infringing conduct has caused Landmark to suffer

damages and harm, including, but not limited to, lost derivative market exploitation opportunity, lost revenues and profits, lost market share, loss of goodwill and reputation, and other damages, the exact nature and extent of which will be proven at trial.

47. Accordingly, Landmark is entitled to an award against Defendants for the recovery of Defendants' profits, if any, Plaintiff's actual damages and punitive damages, pursuant to 17 U.S.C. §§ 504.

### THIRD CLAIM FOR RELIEF FOR BREACH OF CONTRACT
### (Against Hasbro)

48. Landmark incorporates by reference paragraphs 1 through 47, inclusive, and realleges them here as though fully set forth herein.

49. Pursuant to Section IV of the License Agreement, Hasbro is obligated to "keep separate records covering all sales transactions relating to the terms and subject matter of this Agreement, and showing the number of Articles made and sold by it hereunder." Further, Hasbro must furnish written reports to Landmark on a quarterly basis not later than forty-five days after each quarter period ending on March 31, June 30, September 30 and December 31, of each year showing the total number of Articles made and sold by Hasbro during the quarter. Landmark has the right to examine Hasbro's records relating to the subject matter of the License Agreement, and Hasbro is obligated to provide Landmark with "free and full access thereto for such purpose at all reasonable business hours of the day during which the office of Licensee shall be open."

50. Pursuant to Section VI of the License Agreement, Hasbro is obligated to accompany each quarterly report with a payment of the 3% royalties shown to be due to Landmark, computed as alleged above.

51. The License Agreement is a valid and subsisting agreement, binding upon Landmark and Hasbro as the parties or legal successors to the parties, thereto.

52. Landmark has performed and continues to perform all of its

obligations under the License Agreement.

53. Hasbro has breached the License Agreement by, among other things, failing to submit complete and accurate reports as required by Section IV, failing to make royalty payments as required by Section VI, and failing to provide Landmark with the records from which it could determine the amounts that it is owed.

54. Landmark discovered Hasbro's breaches for the first time in 2013, when it was prompted to investigate by media reports of Hasbro's intention to produce a feature film based upon *Candy Land*. Prior to 2013, Landmark had no notice of, and no reason to believe that Hasbro had been concealing sales and failing to submit reports and pay royalties as required by the License Agreement.

55. As a result of Hasbro's breaches of the License Agreement, Landmark has suffered monetary damages in an amount to be proven at the time of trial.

## FOURTH CLAIM FOR RELIEF FOR AN ACCOUNTING
### (Against Hasbro)

56. Landmark incorporates by reference paragraphs 1 through 55, inclusive, and realleges them here as though fully set forth herein.

57. Hasbro is obligated to provide to Landmark accurate accountings of the sales transactions governed by the License Agreement, as alleged above.

58. Despite demand therefor, Hasbro has failed and refused to provide accurate accountings, as alleged above.

59. The books and records necessary to determine royalties due to Landmark are solely in the possession and custody of Hasbro.

60. By reason of the acts and conduct of Hasbro as alleged herein, there is a balance due to Landmark that can only be ascertained by an accounting of all sales transactions governed by the License Agreement. Landmark therefore requests that the Court order Hasbro to render such an accounting under the supervision of the Court in order to ascertain the full amount of the royalties due and owing to Landmark.

WHEREFORE, Landmark prays for judgment against DEFENDANTS as follows:

1. That a declaratory judgment issue adjudicating Landmark to be the owner of the copyrights in and to the Works.

2. That Defendants be adjudged to have infringed Landmark's copyrights in the Works, in violation of 17 U.S.C. §§ 106 and 501;

3. That Defendants, and their officers, directors, employees, agents, representatives, affiliates, subsidiaries, distributors and all persons acting in concert with them, be enjoined from infringing Landmark's copyrights, pursuant to 17 U.S.C. § 502;

4. That Defendants, and their officers, directors, employees, agents, representatives, affiliates, subsidiaries, distributors and all persons acting in concert with them, be ordered to impound and dispose of all infringing materials, pursuant to 17 U.S.C. § 502;

5. That Defendants be directed to file with this Court and serve on Landmark, by and through its counsel of record herein, within thirty (30) days after service of any such injunctions, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunctions and orders described above;

6. That Defendants be required to account to Landmark for any and all profits derived by their exploitation of the Works;

7. That Defendants be ordered to pay over to Landmark all damages that Landmark has sustained, or will sustain, as a consequence of the acts complained of herein, subject to proof at trial, and that Landmark be awarded any profits derived by Defendants as a result of said acts, or as determined by said accounting, pursuant to 17 U.S.C. § 504;

8. That Landmark be awarded its damages suffered as a result of Hasbro's breach of contract;

9. That Landmark be awarded pre-judgment interest; and

10. That Plaintiff have such other and further relief as the Court may deem appropriate.

Dated: July 16, 2014        DRINKER BIDDLE & REATH LLP


By: /s/ *Sheldon Eisenberg*
       Sheldon Eisenberg

Attorneys for Plaintiff
Landmark Entertainment Group, LLC

## JURY TRIAL DEMAND

Landmark hereby demands a trial by jury.

Dated: July 16, 2014                    DRINKER BIDDLE & REATH LLP


By:  /s/ *Sheldon Eisenberg*
     Sheldon Eisenberg

Attorneys for Plaintiff
Landmark Entertainment Group, LLC